**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:03-cr-00542-JCM-PAL |
| | ) | |
| Plaintiff, | ) | **REPORT OF** |
| | ) | |
| vs. | ) | **FINDINGS AND RECOMMENDATION** |
| | ) | |
| | ) | (M/Dismiss for Vindictive Prosecution - #1122) |
| | ) | (M/Election & Dismissal for Multiplicity - #1123) |
| MICHAEL HURN, et al., | ) | (Joinders - ## 1160, 1161, 1162, 1163, |
| | ) | 1164,1165, 1166, 1167, 1168, 1169, |
| Defendants. | ) | 1170, 1173,1174, 1175, 1176, 1177, |
| | ) | 1178, 1179, 1181, 1182, 1195) |
| | ) | |

This matter was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 on defendant Michael Hurn's Motion to Dismiss for Vindictive Prosecution and for Discovery Related Thereto (#1122) filed February 22, 2006. After a series of stipulations to continue the date to file a response and reply (## 1132, 1133, 1134, 1135, 1146), the government filed its Response to Defendant's Motion for Dismissal Based upon Vindictive Prosecution (#1153) on April 12, 2006. The defendant filed a Reply (#1211) May 23, 2006.

Also before the court is defendant Michael Hurn's Motion for Election and Dismissal of Counts for Multiplicity (#1123), filed February 22, 2006. The government filed its Response (#1154) on April 12, 2006, after having the date for a response continued by the same stipulations referenced above. The defendant filed a Reply (#1158) on April 21, 2006. Co-defendants Calvin Schaefer, Charles Acosta, Raymond Foakes, Rodney Cox, Jesse Mahon, Brian Wolff, Sohn Regas, Montgomery Elliott, Daniel Roay, Donald Smith, John Ward, Ricky Jenks, Ron Arnone, Jason Peterson, Richard Fabel, Michael Smullen, Matthew Carlock, Patrick Kalabolas, James Hannigan and Steve Eades filed joinders in the latter Motion to Dismiss (#1123). (Joinders ## 1160, 1161, 1162, 1163, 1164, 1165, 1166, 1167, 1168, 1169, 1170, 1173, 1174, 1175, 1176, 1177, 1178, 1179, 1181, 1182, 1195). The court has considered

1   the motions, the United States' responses, and plaintiff's reply.  For the reasons set forth below, it is my

2   recommendation that the defendant's motion to dismiss (#1122) be denied, and that the defendant's

3   motion for election and dismissal (#1123) be denied.

4                                                    **BACKGROUND**

5   **A.      The Indictment**

6          Defendant Michael Hurn ("Hurn") is charged in an indictment returned December 2, 2003 with

7   ten counts of violence in aid of racketeering ("VICAR") in violation of 18 U.S.C. § 1959, use of a

8   firearm in the commission of a felony in violation of 18 U.S.C. § 924(c), and aiding and abetting in

9   violation of 18 U.S.C. § 2.  The indictment also contains forfeiture allegations.  A superseding

10  indictment returned October 25, 2005, added an additional 22 counts of VICAR in violation of 18

11  U.S.C. § 1959, use of a firearm in the commission of a felony in violation of 18 U.S.C. § 924(c), and

12  aiding and abetting in violation of 18 U.S.C. § 2. The indictment arises out of events which occurred at

13  the Twentieth Annual Laughlin River Run in Laughlin, Nevada, between April 25 and April 28, 2002.

14         It alleges that the Hell's Angels Motorcycle Club ("HAMC") is an outlaw motorcycle gang

15  engaged in racketeering activity whose members and associates engage in acts of violence and narcotics

16  distribution.  The HAMC is alleged to accomplish its objectives through creating a climate of fear by

17  assaulting members of rival motorcycle clubs, particularly the Mongols.  It is alleged that there was a

18  long and violent history between the HAMC and the Mongols which included a series of occurrences in

19  2001 in California and Nevada preceding the April 2002 Annual Laughlin River Run.  Several "minor

20  events" between the HAMC and Mongols occurred prior to the April 27, 2002 incident which resulted

21  in a violent confrontation in Rosa's Cantina in Harrah's Laughlin Casino between the two clubs.  A

22  fight broke out which ended in three deaths and multiple people being stabbed and shot.  Hurn is one of

23  forty-four HAMC members who have been indicted in this case.

24  **B.      The Motions**

25         Hurn argues in his Motion to Dismiss for Vindictive Prosecution and for Discovery Related

26  Thereto (#1122) ("Motion to Dismiss") that the government sought the additional charges in the

27  superseding indictment for purely vindictive reasons.  He seeks an evidentiary hearing on the motion

28  and that the government be compelled to produce *in camera* "any and all correspondence, notes,

1    memoranda or other documents whatsoever, in whatever form, within its possession, custody or control

2    or which it is capable of bringing within its possession, custody or control" related to the government's

3    selection of charges in the original indictment, the selection of charges in the superseding indictment,

4    and the conduct or anticipated conduct of plea bargaining negotiations with respect to either the

5    indictment or superseding indictment.

6        Hurn's Motion for Election and Dismissal of Counts for Multiplicity (#1123) ("Motion for

7    Election") argues that many of the charges in the superseding indictment are multiplicitous, and

8    therefore the government must be required to elect between counts 21 and 22, counts 23 and 24, counts

9    25 and 26, counts 27 and 28, and counts 29 and 30.  He also argues that count 20 should be dismissed.

10       The Motion to Dismiss seeks to incorporate by reference the Motion for Election on the basis of

11   Hurn's argument that the alleged multiplicity of the charges constitutes evidence of the prosecutors'

12   vindictiveness.  Hurn requests in his Motion for Election that the court consider both motions together

13   as one, as they are bound up with one another.  The court agrees that the two motions are very much

14   intertwined, and has therefore considered them in conjunction with one another.

**DISCUSSION**

15

16   I.    **Motion for Election (#1123)**

17        A.    **The Parties' Arguments**

18        Hurn argues that the counts alleging the use and carrying of a firearm in relation to a crime of

19   violence in violation of 18 U.S.C. § 924(c) based upon attempted murder are multiplicitous of the

20   counts of violations of 18 U.S.C. § 924(c) based upon assault with a deadly weapon because both sets

21   of charges are predicated upon the same set of acts: firing weapons and inflicting gunshot wounds upon

22   five victims.  Counts 3, 5, 7, 15 and 17 charge all 44 defendants in the superseding indictment with

23   violence in aid of racketeering based on five counts of assault with a deadly weapon on five victims.

24   Counts 2, 4, 6, 14, and 16 charge all 44 defendants with violence in aid of racketeering for the

25   attempted murder of the same five alleged victims.  Counts 22, 24, 26, 28 and 30 charge the defendants

26   with five counts of using a firearm in the commission of a felony – assault, and counts 21, 23, 25, 27

27   and 29 charge the defendants with an additional five counts of using a firearm in the commission of a

28   felony – attempted murder.  Hurn contends that multiplicitous charges such as these violate the double

1    jeopardy clause of the Fifth Amendment and Federal Rule of Criminal Procedure 8(a), and therefore the

2    government must elect between the two sets of § 924(c) charges.  In addition, Hurn seeks an order that

3    "Count 20 of the instant Superceding Indictment be dismissed," but does not provide any argument or

4    authority for that request.

5              The government responds first by pointing out that the defendant does not challenge the validity

6    of multiple counts of VICAR, violations of 18 U.S.C. § 1959, because that statute explicitly allows for

7    separate counts based upon attempted murder and assault with a deadly weapon done in furtherance of

8    racketeering activity.  The government notes that the act of assault with a deadly weapon and attempted

9    murder of a single victim can involve different conduct, and argues that the two crimes require proof of

10   different elements.  In response to Hurn's claim that the temporality of acts that form the bases of the

11   charges makes the two sets of § 924(c) counts multiplicitous, the government argues that the proper test

12   is whether the two sets of counts are based upon the same offense or on separate, properly charged

13   crimes.  In addition, the government argues that count 20, illegal use of a firearm in furtherance of the

14   VICAR conspiracy, is not multiplicitous of count 1 because in the Ninth Circuit, a substantive offense

15   and conspiracy are two separate offenses for purposes of § 924(c).  Finally, the government contends

16   that if, after the presentation of the evidence at trial the court considers that the § 924(c) counts are

17   multiplicitous, the proper remedy is to submit all the charges to the jury and if the jury should convict

18   on both sets of multiplicitous charges, the court could merge the convictions.

19             In reply, Hurn contends that the government's claim that attempted murder and assault with a

20   deadly weapon can involve different conduct ignores the facts alleged in the superseding indictment.

21   Acknowledging that it is a "truism" the acts of assault with a dangerous weapon and acts of attempted

22   murder concerning a single victim can involve different conduct, Hurn argues those are not the factual

23   allegations of this superseding indictment.  Here, the superseding indictment alleges that each pair of

24   offenses are based on a single act which occurred simultaneously.  Hurn points out that the conduct

25   alleged in each of the indictment's counts for attempted murder is identical to that alleged in each count

26   of assault with a deadly weapon.  Hurn also asserts that under Nevada law, assault with a deadly

27   weapon has long been considered a lesser included offense of attempted murder in a shooting offense.

28   Hurn reasons that the simultaneous nature of the alleged conduct, coupled with the status of assault

4

1    with a deadly weapon as a lesser included offense of attempted murder means the government engaged

2    in "strictly arbitrary overcharging" in violation of the constitutional prohibition against double jeopardy.

3    Lastly, he acknowledges that the case law permits resolution of multiplicitous charges after submission

4    of the case to the jury, but asserts where, as here, he has raised a vindictive prosecution argument

5    pretrial resolution of the multiplicity challenge is most appropriate.

6    **B.    Analysis**

7         The Ninth Circuit has held that "crimes occurring as part of the same underlying occurrence

8    may constitute separate predicate offenses [for 18 U.S.C. § 924(c) charges] if properly charged as

9    separate crimes." <u>U.S. v. Andrews</u>, 75 F.3d 552, 558 (9th Cir. 1996) (citing <u>U.S. v. Fontanilla</u>, 849

10   F.2d 1257, 1258-59 (9th Cir. 1988)).  Therefore, the court must determine whether each set of predicate

11   VICAR charges constitutes two separate predicate offenses, or if the predicate offenses are

12   multiplicitous, and thus do not support two sets of charges for violations of 18 U.S.C. § 924(c).  The

13   government argues that Hurn has effectively waived this argument because he does not explicitly

14   challenge the validity of the VICAR charges.  Although the government's argument is technically

15   correct, Hurn does challenge the validity of charges based on predicate offenses that he argues are

16   multiplicitous.  Hurn's arguments get to the same core issue, and thus the court will consider the

17   validity of the underlying sets of VICAR charges.

18        A multiplicitous indictment charges a single offense in separate counts and, therefore, violates

19   the Fifth Amendment's prohibition against Double Jeopardy.  Among other things, the Double Jeopardy

20   clause "protects against multiple punishments for the same offense." <u>United States v. Wolfswinkel</u>,

21   44 F.3d 782, 784 (9th Cir. 1995), <u>citing</u>, <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969).  The

22   principal danger raised by a multiplicitous indictment is the possibility that the defendant will receive

23   more than one sentence for a single offense.  <u>United States v. Matthews</u>, 240 F.3d 806, 818 (9th Cir.

24   2001), <u>quoting</u>, <u>United States v. Galvan</u>, 949 F.2d 777, 781 (5th Cir. 1991).  In the Ninth Circuit, the

25   district court's decision whether an indictment is multiplicitous and, therefore, violative of a

26   defendant's Double Jeopardy rights is reviewed *de novo*.  <u>United States v. McKittrick</u>, 142 F.3d 1170,

27   1176 (9th Cir. 1998).

28   ///

1        "Where the same conduct violates two statutory provisions, the first step in the double jeopardy

2 analysis is to determine whether the legislature – in this case Congress – intended that each violation be

3 a separate offense." Garrett v. U.S., 471 U.S. 773, 778 (1985).  The most common method the court

4 uses to determine whether Congress intended each violation to be a separate offense is to apply the test

5 in Blockburger v. United States, 284 U.S. 299 (1932).  In Blockburger, the Supreme Court held that

6 "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to

7 be applied to determine whether there are two offenses or only one is whether each provision requires

8 proof of an additional fact which the other does not." Id. at 304, citing, Gavieres v. United States, 202

9 U.S. 338, 341 (1911).  However, "the Blockburger rule is not controlling when the legislative intent is

10 clear from the face of the statute or the legislative history." Garrett, 471 U.S. at 779 (citing Missouri v.

11 Hunter, 459 U.S. 359, 368 (1983)).

12        In the instant case, the legislative history of 18 U.S.C. § 1959 reveals Congress' intent to create

13 separate punishable offenses for different violent crimes done in aid of racketeering activity.  Congress

14 enacted VICAR as part of the Comprehensive Crime Control Act of 1984 (P.L. 98-473).[1]  At the same

15 time and in the same piece of legislation, Congress also enacted the federal "murder-for-hire" statute as

16 part "a" of what was originally § 1952[2], and which originally included VICAR as part "b."  See Id.; see

17 also S. Rep. No. 225, 98TH Cong., 1ST Sess. 1983, 1984 U.S.C.C.A.N. 3182, 3485.  The two sections

18 were not only created at the same time, but are also very much intertwined since the murder-for-hire

19 statute defines many of the terms used in VICAR.  See § 1958(b) (defining the terms "anything of

20 pecuniary value," "facility of interstate commerce," and "state" used in both statutes).  As a result, a

21 comparison of the two offers an excellent window into what Congress intended when it created the

22 statutory structure of each provision.

23       A comparison of the legislative history of the two statutory provisions reveals that Congress

24 knew how to create a statute allowing for only a single charge with different possible punishments

25

26        [1]The VICAR statue was originally enacted as 18 U.S.C. § 1952(b).  It was later renumbered into

27 the present § 1959.  (See P.L. 100-690.)

28        [2]"Murder-for-hire" has now been renumbered as § 1958.

1    depending on the degree of harm when it created the murder-for-hire statute, but did not do so for

2    VICAR.  In the case of murder-for-hire, the Senate report reveals that Congress intended for a single

3    charge for travel in interstate commerce or the use of the mails or of a facility in interstate commerce

4    with the intent that a murder be committed in violation of state or federal law.  The statute created

5    different punishments depending on the level of resulting harm.  1984 U.S.C.C.A.N. 3182, 3485-86.

6    For example, a violation of this statute resulting in personal injury is punished by incarceration of up to

7    twenty years and a $20,000 fine, whereas a violation resulting in death increases the punishment to life

8    imprisonment and a $50,000 fine.  A violation resulting in death does not mean that the defendant

9    would receive punishment of life imprisonment plus a separate and addition punishment of up to twenty

10    years imprisonment; rather the two are separate categories of punishment depending on the nature of the

11    harm.

12          By contrast, VICAR creates a series of separate punishments for different predicate violent

13    criminal acts including murder, kidnaping, maiming, assault with a dangerous weapon, assault resulting

14    in serious bodily injury, or threat to commit a crime of violence.  Punishment under this statutory

15    provision is determined by the predicate act or acts the defendant commits in aid of racketeering

16    activity, not by the degree of harm inflicted on the victim as with murder-for-hire.  For example, the

17    statutory punishment for the predicate act of kidnaping in aid of racketeering activity is death or life

18    imprisonment, or a fine, or both, whereas the statutory punishment for maiming in aid of racketeering

19    activity is imprisonment for not more than thirty years or a fine, or both.  See § 1959(a)(1) & (a)(2).

20    The two predicate acts are separate, and punishment for one does not preclude punishment under this

21    statute for the other.  This structure contrasts the murder-for-hire statute in which one act constitutes

22    only one charge with differing punishments depending on the resulting harm.  The difference between

23    these two statutory structures, coupled with their interdependence and simultaneous creation, suggests

24    that Congress intended VICAR to permit multiple counts to coincide with each predicate act done in aid

25    of racketeering activity.

26          Hurn argues, however, that the alleged predicate crimes are charged as violations of Nevada

27    state law which have been interpreted to be lesser included crimes of one another, thus making the two

28    sets of VICAR charges for attempted murder and assault with a deadly weapon multiplicitous.  See e.g.

7

1   Walker v. State of Nevada, 110 Nev. 571, 575 (1994).  He also argues that the two sets of counts for

2   attempted murder and assault with a deadly weapon are predicated on the same single act with respect

3   to each set of counts; that is, the infliction of a gunshot wound upon a named victim.  On that basis he

4   contends that he has received two multiplicitous charges for the same act.

5          While Hurn's interpretation of state law is correct, "reference to violating state law in the

6   VICAR count is only meant to indicate unlawful conduct that constitutes a predicate offense for a

7   VICAR charge . . .."  U.S. v. Diaz, 176 F.3d 52, 96 (2d Cir. 1999).  Attempted murder in aid of

8   racketeering activity is "a distinctive substantive offense that requires proof of its own particular

9   elements" and "not simply a federalized version of the state crime."  Id. at 101.  To determine whether

10  assault with a deadly weapon in aid of racketeering activity is a lesser included offense of attempted

11  murder in aid of racketeering activity would require resort to the Blockburger test comparing the

12  elements of each crime.

13         "The Supreme Court has recognized that comparing statutes to determine whether one set of

14  elements is a subset of another requires a purely textual comparison."  U.S. v. Walker, 291 F.3d 1180

15  1187 (9th Cir. 2002) (citing Carter v. U.S., 530 U.S. 225, 260-61 (2000)).  Under this test, courts are to

16  compare "the *statutory elements*, not the offenses charged in the indictment."  Id. (citing U.S. v. Nash,

17  115 F.3d 1431, 1437 (9th Cir. 1997)) (emphasis in original).  Therefore, contrary to Hurn's argument, it

18  does not matter that the two sets of counts for attempted murder and assault with a deadly weapon are

19  based upon the same set of facts, so long as each count requires proof of an element which the other

20  does not.

21         In the case of the instant counts, attempted murder and assault with a deadly weapon, each does

22  indeed require proof of an additional element which the other does not.  In the Ninth Circuit, attempted

23  murder requires proof that (1) the defendant did something that was a substantial step toward killing the

24  intended victim, and (2) the intent to kill.  9th Cir. Crim. Jury Instr. 8.93 (2003).  By contrast, assault

25  with a deadly weapon requires proof that (1) the defendant intentionally struck or wounded the victim

26  or used a display of force that reasonably caused the victim to fear immediate bodily harm, (2) the

27  defendant acted with the specific intent to do bodily harm to the victim, and (3) the defendant used a

28  weapon.  Id. at 8.5.  A cursory comparison of the two sets of elements reveals that a charge for

1    attempted murder requires proof of the additional element that the defendant had the intent to kill,

2    rather than merely the intent to cause bodily harm.  Likewise, assault with a deadly weapon adds the

3    requirement that the defendant commit the crime by use of a weapon, whereas attempted murder may

4    be committed without a weapon.  Thus the two sets of counts are not multiplicitous as each requires

5    proof of an additional element which the other does not, although with respect to any single alleged

6    victim, Hurn could not be convicted of both offenses.

7         Having analyzed the sets of counts for attempted murder in aid of racketeering activity in

8    violation of 18 U.S.C. § 1959(a)(1) and (2), and assault with a deadly weapon in aid of racketeering

9    activity in violation of 18 U.S.C. § 1959(a)(3) using both the statute's legislative history and the

10   Blockburger elements test, the court finds that counts 21 and 22, counts 23 and 24, counts 25 and 26,

11   counts 27 and 28, and counts 29 and 30 are not multiplicitous.

12        Hurn's motion to dismiss count 20, illegal use of a firearm in furtherance of the VICAR

13   conspiracy, is not supported by any points and authorities.  Pursuant to LCR 47-9, Hurn's failure to file

14   points and authorities in support of his further contention that count 20 of the superseding indictment

15   should be dismissed constitutes a consent to the denial of the motion.

16        For the reasons stated, the undersigned recommends that the defendant's Motion for Election

17   and Dismissal of Counts for Multiplicity (#1123) be denied.

18   **II.    Motion to Dismiss (#1122)**

19        **A.    The Parties' Arguments**

20        Hurn makes a series of arguments that the prosecutors' decision to indict him and his co-

21   defendants was motivated by vindictiveness.  First, he argues that the charges were brought against this

22   group of individual defendants due to each individual's association with the HAMC in violation of the

23   defendants' First Amendment right of association.  Second, he argues that a group plea offer was

24   presented as an "ultimatum implicating adverse treatment of persons other than himself" because

25   Hurn's rejection of the plea offer necessarily eliminated his co-defendants' ability to accept the plea

26   offer, and vice versa.  Third, he contends that the prosecutors knowingly withheld the additional

27   charges in the superseding indictment from the original indictment in violation of the prosecutors' duty

28   to bring all the possible charges at one time.  As a result, Hurn argues that the superseding indictment

1   added the additional charges in retaliation for his decision to reject the group plea offer.  Fourth, Hurn

2   argues that the defendants were not forewarned of the prosecutors' intent to bring the additional attempt

3   murder charges in a superseding indictment should the defendants reject the group plea offer at the time

4   the group plea offer was made.  Finally, Hurn argues that the prosecutors sought the superseding

5   indictment adding additional charges with the knowledge that those charges were multiplicitous.

6         The government first responds that it informed the court and the defendants of its intent to

7   supersede the indictment and add additional charges at a scheduling conference.  Additionally, the

8   government contends that it informed the defendants of the nature of the additional charges it would

9   seek in a superseding indictment before the two sides engaged in plea negotiations, and disputes that it

10  sought the superseding indictment because the defendants refused to accept the plea offer.  Second, the

11  government contends that the superseding indictment should not be dismissed even if the court finds

12  that the government obtained it because the defendants did not plead guilty as the Supreme Court

13  allows selectivity in enforcement provided that such selection is not deliberately based on an unjustified

14  standard such as race or religion.  Third, the government asserts that the defendants are not being

15  prosecuted for their membership in the HAMC, but rather for their actions at Rosa's Cantina in

16  Harrah's Laughlin Casino.  Fourth, the government argues that it added the counts of attempted murder

17  to the indictment "to better reflect the defendants' conduct during the Laughlin incident."  (Resp. at

18  8:25-26.)  Finally, the government points out that Hurn does not cite any post-<u>Bordenkircher</u> cases in

19  the Ninth Circuit finding vindictiveness, except for those involving actions after the parties had agreed

20  upon a plea.

21         **B.      Analysis**

22               **1.      <u>Prosecutorial Discretion</u>**

23         In <u>United States v. Armstrong</u>, the Supreme Court cited a long line of prior precedent holding

24  the Attorney General and the United States Attorney have broad discretion to enforce federal criminal

25  laws.  517 U.S. 456, 463 (1996).  A presumption of regularity supports prosecutorial decisions and, "in

26  the absence of clear evidence to the contrary, courts presume that they have properly discharged their

27  official duties."  <u>Id.</u> at 464, <u>citing</u>, <u>United States v. Chemical Foundation, Inc.</u>, 272 U.S. 1, 14-15

28  (1926).  It is well established that as long as a prosecutor has probable cause to believe the accused has

committed a violation of law, the decision whether or not to prosecute and what charge to bring before a grand jury generally rests entirely in the discretion of the prosecutor.  <u>Armstrong</u>, 517 U.S. at 464, <u>citing</u>, <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978).

The Supreme Court has made it clear that the broad discretion afforded prosecutors:

> rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.  Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.  Judicial supervision in this area, moreover, entails systematic cause for particular concern.  Examining the basis of the prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.  All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

<u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985).

## 2.    <u>Vindictive Prosecution</u>

Notwithstanding the prosecutor's broad discretion, and the presumption of regularity supporting prosecutorial decisions, the Due Process Clause of the Fifth Amendment prohibits a prosecutor from bringing charges against a defendant in retaliation for the defendant's exercise of a statutory, procedural, or other protected right.  <u>Blackledge v. Perry</u>, 417 U.S. 21, 27 (1974).  A long line of Supreme Court cases beginning with <u>North Carolina v. Pearce</u> has held that it is a due process violation "of the most basic sort" to punish a person for doing that which the law plainly allows.  <u>Bordenkircher v. Hayes</u>, 434 U.S. 357.

In <u>North Carolina v. Pearce</u>, the Supreme Court held that a defendant may not be punished for successfully challenging his conviction and developed the doctrine of presumed vindictiveness.

11

1  395 U.S. 711 (1969).  There, the Supreme Court considered whether a trial judge could constitutionally

2  impose a more severe sentence upon retrial and reconviction of an accused whose conviction was

3  overturned on appeal.  The court held that although a more severe sentence was not absolutely

4  prohibited, due process requires that the reasons for imposing the sentence after retrial and reconviction

5  must appear on the record so that the constitutional legitimacy of the increased sentence may be

6  reviewed on appeal.  Id. at 725-26.  Recognizing that retaliatory motive is extremely difficult to prove,

7  the Court held that if a more severe sentence was imposed after reconviction, and if no objective

8  information appears, vindictiveness can be presumed.  Id.

9     Blackledge v. Perry extended the presumption of vindictiveness doctrine to prosecutorial

10  conduct.  417 U.S. 21 (1974).  There, Perry was initially charged with a misdemeanor assault with a

11  deadly weapon charge for an altercation with another inmate.  He was convicted in a lower North

12  Carolina state court and received a six-month sentence.  He exercised his right under state law to a trial

13  de novo in Superior Court.  Before the trial de novo, the prosecutor indicted Perry for a felony for the

14  same acts for which he had been charged, convicted, and sentenced as a misdemeanor.  He pled guilty

15  to the felony and received a five to seven year sentence.  In reviewing the sentence on appeal, the

16  Supreme Court held that the Due Process Clause of the Constitution is not offended by all possibilities

17  of increased punishment upon retrial after appeal, only those that pose a realistic likelihood of

18  vindictiveness.  417 U.S. at 27 (internal quotations and citations omitted).  In such cases "due process

19  of law requires a rule analogous to that of the Pearce case."  Id.

20     The cases involving increased charges and potentially more severe sentences after trial "are to

21  be sharply distinguished from cases in which the prosecutor increases the charges in the course of

22  pretrial proceedings."  United States v. Gallegos-Curiel, 681 F.2d 1164, 1167 (9th Cir. 1982), citing,

23  United States v. Goodwin, 457 U.S. 368 (1982).  In Goodwin, the defendant was arraigned and pled not

24  guilty to misdemeanor and petty offense charges before a magistrate judge.  Plea negotiations broke

25  down, and the defendant requested a jury trial in district court.  The case was assigned to an Assistant

26  U.S. Attorney who indicted the defendant on a felony charge and three misdemeanors.  The defendant

27  was convicted after a jury trial of the felony and one misdemeanor count.  He challenged his conviction

28  as a vindictive prosecution on appeal.  The Supreme Court analyzed the timing and nature of the right

1    the defendant exercised, concluded that it did not present a realistic likelihood of vindictiveness, and

2    held that a presumption of vindictiveness was not warranted in that pretrial setting.  The court's

3    decision found that there are good reasons for exercising caution in adopting a presumption of

4    vindictiveness in pretrial proceedings.

5         First, in the pretrial context, "the prosecutor's assessment of the proper extent of prosecution

6    may not have crystallized."  457 U.S. at 381.  In preparing for trial, a prosecutor may learn additional

7    information that suggests additional charges or "he may simply come to realize that information

8    possessed by the State has broader significance."  Id.  Secondly, before trial a defendant is expected to

9    invoke procedural and constitutional rights that impose some burden on the prosecutor.  Because

10   defense counsel routinely file pretrial motions challenging the evidence and sufficiency of the

11   indictment, affirmatively raising available defenses, and making demands for information and services,

12   "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize

13   and deter."  Id.  Thus, the Court concluded that the timing of the prosecutor's action and the nature of

14   the right the defendant invoked – to a jury trial – did not warrant a presumption of vindictiveness.  The

15   prosecutor should remain free prior to trial to exercise broad discretion, and "[a]n initial decision should

16   not freeze future conduct."  Id. at 381-82.

                          a.        **Actual Vindictiveness**

18        In the absence of a presumption of prosecutorial vindictiveness, a defendant must prove actual

19   vindictiveness.  To establish a prima facie case of prosecutorial vindictiveness, "a defendant must show

20   either direct evidence of actual vindictiveness or facts that warrant an appearance of such."  Montoya,

21   45 F.3d at 1299, quoting, United States v. Sinigaglio, 942 F.2d 581, 584 (9th Cir.1991).  Or, as the

22   Ninth Circuit articulated the test in Gallegos-Curiel, "to establish a claim of vindictive prosecution, the

23   defendant must make an initial showing that charges of increased severity were filed because the

24   accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an

25   appearance of vindictiveness."  681 F.2d at 1168.  If a defendant makes a sufficient prima facie

26   showing of vindictiveness, the burden shifts to the prosecution to show an absence of vindictive motive,

27   or that the increase in the severity of charges was justified by independent reasons or intervening

28   / / /

1   circumstances that dispel the appearance of vindictiveness.  Id. (internal citations and quotations

2   omitted.)

3                  **b.      Charges After Plea Negotiations**

4           It is also well established that vindictiveness will not be presumed simply from the fact that

5   more severe charges are filed after plea negotiations break down.  See, Gallegos-Curiel, 681 F.2d at

6   1169.  In Bordenkircher v. Hayes, supra, the Supreme Court held that the Due Process Clause of the

7   Fourteenth Amendment did not prohibit a prosecutor from making good on a threat during plea

8   negotiations to bring additional charges against a defendant if he refused to plead guilty.  The court

9   reasoned that pretrial plea negotiations involve "give and take" and that as long as the defendant is free

10  to accept or reject a prosecutor's offer, there is no constitutional violation.  The Bordenkircher court

11  accepted plea negotiation as a legitimate process and declined to apply a presumption of vindictiveness

12  for a prosecutor's decision to seek additional charges after plea negotiations broke down.  The

13  prosecutor's conduct did not establish that the additional charges were brought solely to "penalize" the

14  defendant.  Such decisions, the court found, were justified as a proper exercise of prosecutorial

15  discretion, and the fact that the prosecutor threatened the defendant with additional charges in plea

16  negotiations did not prove that the action threatened was a due process violation rather than an

17  appropriate exercise of prosecutorial discretion.

18          Here, it is undisputed that the prosecutors offered the defendants a group plea negotiation before

19  the superseding indictment was returned.  It is undisputed that the plea negotiation which was offered

20  required all defendants to participate or none of the defendants charged in the original indictment would

21  receive the negotiation offered.  It is also undisputed that the prosecutor advised the defendants that if

22  the negotiation was not accepted, the government would seek a superseding indictment adding firearms

23  charges.  Counsel for Hurn avers that he was informed by government counsel during plea negotiations

24  that if his client did not accept the offer, the prosecution would seek a superseding indictment against

25  Hurn and every other co-defendant named in the initial indictment with additional firearms violations

26  under 18 U.S.C. § 924.  (See Fumo Affidavit, Ex. "B" to Motion to Dismiss, #1122, ¶ 4.)  Mr. Fumo

27  understood that the additional firearms violations would correspond to each count of the assault with a

28  dangerous weapon charged in the initial indictment, Counts 2, 3, 4, 8, and 9.  (Id.)  However, he was not

                                                    14

1   informed by the government that the prosecution intended to seek additional charges of attempted

2   murder if Hurn rejected the deal. (Id., ¶ 5.)  Government counsel disputes this latter averment, and

3   asserts that defense counsel was informed the government would seek a superseding indictment adding

4   firearms counts, as well as counts of attempted murder under a VICAR theory.  (See Government's

5   Response, #1153, p. 4.)  Although counsel for Hurn and the government dispute the precise nature of

6   the additional charges that were threatened if plea negotiations were not successful, it is undisputed the

7   government threatened to "up the ante" if all of the defendants did not accept the deal.  The defendants

8   did not accept the negotiation offered, and a superseding indictment was returned, adding twenty-one

9   additional counts arising out of the same incident at Rosa's Cantina at Harrah's on April 26 and 27,

10  2002.

11      Hurn acknowledges that generally a prosecutor's decision to indict on additional charges is a

12  legitimate exercise of available leverage in the plea bargaining process.  However, he asserts that the

13  prosecutor's actions in this case were impermissibly based, at least in part, on the defendants'

14  association with one another as members of the HAMC.  He reasons that the law allows him to

15  associate with other members of the HAMC, and that he is effectively being prosecuted for doing that

16  what the law plainly allows in violation of the principles enunciated by the Supreme Court in

17  Bordenkircher.  Hurn also acknowledges that selectivity in enforcement is not a federal constitutional

18  violation so long as it is not deliberately based on an unjustifiable standard such as race, religion, or

19  other arbitrary classification.  However, he argues that his association with other members of the

20  HAMC is protected under the First Amendment, and, therefore, the prosecutors here have applied an

21  unjustified standard in prosecuting him.  This is particularly true where, as here, he argues none of the

22  defendants are charged as a principal, and no substantive conduct is alleged on behalf of any particular

23  individual charged.  Rather, the defendants are being prosecuted for being merely present and

24  associating with other HAMC members on a theory they aided and abetted and/or are vicariously liable

25  for the events occurring at Rosa's Cantina.  This, coupled with the fact that the prosecutors offered a

26  group plea bargain establishes vindictiveness.

27      Hurn also argues that the prosecutors' ultimatum which threatened adverse treatment of Hurn

28  and all of his co-defendants if all of the defendants originally charged did not accept the offer involve

15

1  the constitutional implications of inducing a false guilty plea.  To support his argument, he cites a

2  footnote in Bordenkircher stating:  "This case does not involve the constitutional implications of a

3  prosecutor's offer during plea bargaining of adverse . . . treatment for some person other than the

4  accused, which might pose a greater danger of inducing a false guilty plea by skewing the assessment of

5  risks a defendant must consider."  Bordenkircher at 368, n.8.  This ultimatum, which threatened more

6  serious charges against not only Hurn but forty of his friends and associates, he argues, offends due

7  process, and creates a presumption of vindictiveness.

8      Counsel for Hurn also suspects (argues on "information and belief") that the additional charges

9  now part of the superseding indictment were originally considered by the prosecutors before the first

10  indictment was returned, and that the prosecutors here deliberately omitted the charges and held them in

11  abeyance for negotiation purposes.  Because he believes the prosecutors were fully aware of the

12  additional charges *ab initio* and only sought a superseding indictment when the defendants exercised

13  their right to go to trial, he argues an appearance and apprehension of vindictiveness, and, therefore, a

14  presumption of vindictiveness applies.  The prosecutors' failure to mention their intention to file

15  additional attempted murder charges also shows the superseding indictment was vindictively motivated.

16  Finally, Hurn asserts that the firearms charges are multiplicitous for the reasons argued in his motion to

17  dismiss.  These additional charges are, therefore, not properly or justifiably charged and the

18  prosecutors' deliberate overcharging creates a presumption of vindictiveness.

19      The court finds the record does not support a finding that the prosecutors' actions in seeking a

20  superseding indictment which added additional charges and increased the range of potential penalties

21  shortly after Hurn and his co-defendants rejected plea negotiations was presumptively vindictive.  It is

22  clear the prosecutors upped the ante and made good on their threat to seek additional charges should the

23  defendants decline to accept a group plea negotiation.  However, Hurn has not established hostility or

24  punitive animus because he exercised his rights to go to trial.  As the Ninth Circuit has made clear, "in

25  the context of pretrial plea negotiations, vindictiveness will not be presumed simply from the fact that a

26  more severe charge followed on, or even resulted from, the defendant's exercise of a right."  United

27  States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000).  Hurn has also not established actual

28  vindictiveness or facts that warrant an appearance of such.

1    Finally, the court finds that Hurn has not established his claims of selective or discriminatory

2    prosecution.  Under applicable authority, to establish selective or discriminatory prosecution, a

3    defendant has the burden of demonstrating (1) that others similarly situated generally have not been

4    prosecuted for similar conduct, and (2) that his selection for prosecution was based on impermissible

5    grounds such as race, religion, or his exercise of his right to free speech.  United States v. Hooton,

6    662 F.2d 628, 634 (9th Cir. 1981).  Hurn's subjective belief that he and his co-defendants are being

7    prosecuted for their membership in the HAMC is not evidence of vindictive, selective, or

8    discriminatory prosecution.

9    Additionally, Hurn's argument that a footnote in Bordenkircher suggests that a prosecutor may

10   not engage in plea bargaining resulting in adverse treatment of persons other than the accused is

11   unpersuasive.  434 U.S. at 364 n.8.  The danger the court was addressing there was the possibility that

12   threats of adverse treatment of others might induce an innocent defendant to plead guilty to something

13   he did not do to spare others.  The Supreme Court has recognized that confronting a defendant with the

14   risk of more severe punishment in plea negotiations may have a discouraging effect on the exercise of

15   his trial rights, but found that the imposition of these difficult choices an inevitable, and permissible,

16   part of the plea bargaining system which tolerates and encourages negotiated pleas (internal quotations

17   omitted).  Id. at 364, citing Chaffin v. Stynchcombe, 412 U.S. 17 at 13.  As the court recognized:

18   "Defendants advised by competent counsel and protected by other procedural safeguards are

19   presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be

20   driven to false self-condemnation."  Id. at 363.

21   The court finds Hurn's arguments about the combined effect of the government's group plea

22   offer, threats of additional charges, and failure to "forewarn" of the full extent of the additional charges

23   which would be sought in the superseding indictment ironic and inherently inconsistent.  On the one

24   hand, Hurn argues that the government's threats of bringing additional firearms charges against Hurn

25   and his co-defendants if Hurn and all of his co-defendants did not accept the group offer should give

26   rise to a presumption of vindictiveness because his friends and associates were being threatened with

27   more harsh treatment.  Threats to friends and associates are constitutionally suspect because they run

28   the risk of inducing innocent people to plead guilty to things they did not do to protect their friends and

17

1    loved ones.  On the other hand, Hurn argues that the failure to "forewarn" him that the government

2    intended to seek the additional attempt murder charges should also result in a finding of presumed

3    vindictiveness because his decision to reject the plea offer and to maintain his plea of not guilty was not

4    made intelligently.  Considered together, Hurn is effectively arguing the court should presume

5    vindictiveness because the prosecutors threatened him and his friends and associates, but not as much

6    as they could have in extending the group offer.  In any event, Hurn and his co-defendants rejected the

7    offer and intend to go to trial.  A guilty plea was not induced out of fear of more harsh treatment and

8    neither Hurn, nor any of the defendants joining the motion remotely suggest that they would have

9    accepted the offer if they had known of the extent of the additional charges the government would seek.

10          The court has found that the additional charges contained in the superseding indictment should

11   not be dismissed on multiplicity grounds in a pretrial motion to dismiss.  The additional charges were

12   proprly brought.  The Supreme Court has recognized the importance of counsel during plea

13   negotiations, <u>Brady v. United States</u>, 397 U.S. 742, 758.  It has also recognized a need for a public

14   record establishing a plea was knowingly and voluntarily made.  <u>Boykin v. Alabama</u>, 395 U.S. 238,

15   242.  Similarly, controlling jurisprudence requires that a prosecutor's plea bargaining promise must be

16   kept.  <u>Santobello v. New York</u>, 404 U.S. 257, 262.  However, in pretrial plea bargaining negotiations,

17   prosecutors do not violate a defendant's due process rights in seeking more severe charges following

18   upon, or even resulting from the defendant's rejection of the plea offer, and insistence on his right to go

19   to trial.  <u>United States v. Gamez-Orduno</u>, 235 F.3d 453, 462 (9th Cir. 2000).

20                                              **<u>CONCLUSION</u>**

21          The court finds that the prosecutors' action in seeking a superseding indictment adding

22   additional charges which increased the range of potential penalties after plea negotiations broke down

23   does not establish a presumption of vindictiveness.  Hurn has made no showing of actual vindictiveness

24   in seeking the superseding indictment or that the prosecutors' decision in seeking the superseding

25   indictment was motivated by a desire to punish him or his co-defendants for doing some thing the law

26   allowed him to do.  In short, no due process violation has been established.

27   / / /

28   / / /

18

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that:

    1.    Defendant Michael Hurn's Motion to Dismiss for Vindictive Prosecution and for Discovery Related Thereto (#1122) be DENIED.

    2.    Defendant Michael Hurn's Motion for Election and Dismissal of Counts for Multiplicity (#1123) be DENIED.

Dated this 26th day of May, 2006.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

19